Patricia West v. Lincoln Benefit Life Company. Mr. Jordan. May it please the Court, I'm John Jordan. I represent Patricia West, and I'd like to reserve three minutes for rebuttal. That request will be granted. Thank you, Your Honor. Your Honors, the point to this appeal is that this case is not meaningfully distinguishable from the controlling precedent of the Pennsylvania Supreme Court in Collister, and as a result, Mr. West's widow, the insured beneficiary, Mrs. West, was actually entitled to a summary judgment in her favor with respect to the coverage involved in this case. Well, no, Your Honor, that is not a meaningful distinction. In both cases, you have a person who, at the time they're making this application, is in fact not insured, but who owes nothing to the insurance company and is asked to pay an advance premium during the time that the company decides whether or not they are going to insure them. Now, the magistrate judge here apparently believed that because Mr. West had had a policy which had terminated for non-payment of premiums, and that during the last two months, the last 61 days of that policy, he was covered under what is called the grace period. Therefore, he owed something to the insurance company, and the payment that he made with his reapplication was paying them for that coverage. Therefore, that was something they were entitled to, and that was the distinction. But that's wrong. But didn't he make that payment under the provisions of the ongoing contract? Yes. And didn't the provisions of that ongoing contract say that coverage would not be reinstated until it was determined that he was still eligible for coverage? That's correct, Your Honor. And isn't he therefore subject to those ongoing, those terms of the ongoing contract? No, Your Honor. That, in Collister, the... It's provided here. The ongoing contract provides for the reinstatement. The ongoing contract provides for the payment of the overdue premium in order to initiate the reinstatement and also call for a determination under the terms of that contract that he was still eligible for coverage. And that is a very significant difference, I think, in Collister. Yeah. It did not call for the payment of an overdue... Well, it called for the payment of a certain $235. Well, it called for... That is quoted on pages, I believe, six and seven of my brief, the reinstatement provisions. Under those provisions, the insurer was entitled to ask for payment of any unpaid monthly deductions and a three-month advance payment of premium. What they asked for was the three-month advance payment of premium. That's the amount of money they asked for. They did not... Three-month advance payment of premium? It said, make a payment sufficient to keep the policy in force for three months. It doesn't say three months advance. Well, it can't be for the past. Well, he hadn't paid the premium for the past three months. No. In the first place, that was a two-month period. And if anything was due with respect to that, that would be covered under the paragraph of the reinstatement provision immediately before that, which is payment of amount large enough to cover the unpaid monthly deductions for the grace period. They didn't ask for anything with respect to that. This is not in the briefs. I can explain why. If anything was due, it couldn't be more than $166. So that is clearly not the... That was a payment that they did not think he was actually required to pay since they didn't ask for it. Mr. Jory, you said this case should be controlled by Colister. Yes, sir. And in Colister, the Pennsylvania Supreme Court in 1978, I believe it was, ruled that the policy in question there, which was a new policy, was that there was coverage under that policy based on the expectations of the insured. But they also made reference to a document which he received upon his payment, which was a conditional receipt out of which the Pennsylvania Supreme Court said constituted temporary insurance and then analyzed previous cases and laws in Pennsylvania and other states as to whether or not there was such a thing as temporary insurance. Was there any conditional receipt here in this case? When he filed the application for reinstatement on, I think, July the 15th, did he get anything back from the insurance company? No, sir, he did not. The conditional receipt here in that case is analogous to the application for reinstatement that he filed in that case. The point of the conditional receipt was it unequivocally said that there would be no coverage until he showed the company that he was insurable and that they were entitled to get a medical exam and that there would be no coverage until he was approved for coverage. He didn't get the medical exam before he died and, therefore, under the unequivocal language of that receipt, he would not have been entitled to coverage. The Supreme Court nevertheless held that even though the language of the documents involved was unequivocal, that he would not have coverage, nevertheless, because the company had required the payment of a premium and was holding his money while they decided whether or not to insure him, unless the company could show, by clear and convincing evidence, that the insured had no reason to believe that he was covered during that period, he was covered. The carrier in that case tried to create an issue of fact by showing that the agent had told him that he was going to have to get that medical exam. The Supreme Court said that wasn't good enough because it didn't apparently go on and say, and you won't have any coverage until you do. Although the receipt had told him that you do not have coverage, the Supreme Court said that is not good enough. You have to go beyond that with clear and convincing evidence, insurance company, to show that this person who is now dead couldn't reasonably have believed that he had coverage. Mr. Jordan, I find it somewhat strange that in almost 30 years since Collister, that the Pennsylvania Supreme Court has never had a chance to speak on this issue as to whether or not they would apply the same standard to reinstatements. Is this a case that we should send, should certify to the Pennsylvania Supreme Court for their answer as to whether or not they would treat a reinstatement under the Collister doctrine?  How can we say based on the law post-Collister that the Pennsylvania Supreme Court would rule on a reinstatement case like this that Collister applies when there were prior cases on reinstatements that indicated to the contrary? Well, the prior cases on reinstatements, Your Honor, said that we're going to treat a reinstatement just, you're talking about third circuit cases, aren't you? I'm talking about Pennsylvania cases. Yeah, okay. The reinstatement cases said we're going to treat reinstatement just like an application for insurance in the first place. Then they went ahead and decided it. But there hasn't been any decisions between 1978 and now because it's a fairly unusual situation where you have a person who has applied for insurance, paid a premium, and then dies in the meantime. The only case really that I think there is is the Wise case that this court decided last year, and in that case there was no coverage because the insured, the applicant rather, was given the option of either paying the premium in advance or waiting until coverage was approved and then paying the premium, and he decided to wait and to not pay the premium. So, Collister wasn't even applicable at all, and therefore there was no coverage. But this situation simply apparently hasn't come up. Now, an analogous situation, of course, came up in the Pennsylvania Superior Court in the Dibal case where they had to decide when coverage started. And again, even though the language of the policy was unequivocal, both the application and the policy, as to when coverage would begin, which was tied to when the application was approved, the court applied Collister to hold that that language should be ignored, and in the absence of the kind of clear and convincing evidence the court talked about in Collister, coverage actually started when the advance payment of the premium was made. What do you make of our decision in Glesserman v. Columbia Mutual Life Insurance Company, the 1991 case, where even though it's a New Jersey case, Judge Becker, I believe, in writing that opinion, made reference to Pennsylvania, no, Judge Higginbotham, made reference to Pennsylvania law where he says, under Pennsylvania law, the reinstatement provision contemplates the making of a new contract. The insurance company is not required to reinstate absent evidence of insurability. Well, in that case, as I recall, forgive me just a second, please, Your Honor. That case, again, treated the reinstatement as though it were a new application. And as I recall, and let me make sure I'm correct, the application was made, the application was denied. Two years after the insurance company had denied the reinsurance application, the policyholder died. There had been a denial there, and I would agree that if Mr. West, if they had decided for some reason to deny Mr. West's application and he had then died, yeah, Glesserman would apply. But he died during that period within which they're getting paid a premium, but they have not yet decided whether or not to provide coverage. And it's only in that short span that Collister is actually applicable. And for that reason, he was entitled to coverage. Okay. All right. Mr. Jordan, we'll have you back in rebuttal. Mr. Avis? Is it Avis or Avis? Avis. May it please the Court, I am Alan Avis on behalf of Lincoln Benefit Life Company. I think it's important to start where Judge Fischer left off, which is that in the 30 years since the Collister decision, there has been no case at all that has applied it to a reinstatement. What we do have are this Court's decisions in the Hogan case and in the Glesserman case, which have specifically said that Hogan was before Collister. What's important about Hogan, though, is that in Hogan, they said that a reinstatement contemplates a new contract, but the insurer is not obligated to enter into that contract, quote, unless satisfied that the original risk is still insurable, unquote. That case, the Glesserman case, which quoted it, and the Kessler case, which we cited in our brief, all say that you have to go back to the terms of the original contract, and that's the point that Judge Roth made. You go back to the terms of that original contract, and what you have in this policy is a clear and unambiguous statement that before the reinstatement will apply, there have to be two things. Number one, an examination of the evidence of insurability, and on that basis, number two, specific approval by the company of the reinstatement. The company said that again in the termination letter, which was sent to Mr. West, which neither he nor his wife read, and it said that again in the reinstatement application, which, again, neither he nor his wife read. The reinstatement application specifically says that there is no coverage absent underwriting approval. What it also does is it asks for medical conditions, medicines, doctors, hospitals, anything that would provide evidence of insurability. What it also does is it specifically provides for a release so they can obtain medical records. Given all of that, asking for all of that information, it would not be reasonable under any circumstance, whether Collister applies or whether Collister doesn't apply, for the insured to have concluded reasonably, objectively, that he had coverage simply by mailing in a reinstatement application. In fact, if you look at the answers that are actually on the application that Mrs. West filled out, all she says is that there's a condition being controlled with medication. She doesn't say what that condition is. She doesn't say what the medication is. She doesn't say who treated him or any of the circumstances which would allow Lincoln Benefit Life to determine whether there was, as the contract required, sufficient evidence of insurability. So you're saying that the expectations of the insured are important here? No, what I'm saying is that if you were to decide that Collister does apply, which it does not, then the test under Collister is whether the expectations are reasonable, whether they are objectively reasonable. And under no circumstances are those expectations reasonable here. They didn't even read the policy. If Collister, if we concluded that Collister did apply, didn't the magistrate judge in her report, which was adopted by the district court, get the burden wrong? No. The burden is that it is indeed up to the insurance company by clearing convincing evidence. I mean, that statement's in Collister whether you agree with it or not. That's the law of Pennsylvania. No question about that. The point is that when you examine the evidence... But didn't the magistrate's footnote suggest that the burden would be on Mrs. West to prove the expectations? No, I think where that's coming from is from the Seckle case, which is from the Eastern District of Pennsylvania. And what that case says is that it is the expectations of the insured that matter. And that case said that where there are no expectations in the record that the insured has not met his burden to prove that he had reasonable expectations. Now, whether the Eastern District's statement is consistent with Collister I don't think makes a difference. Yeah, but what I'm saying is didn't the district court through the magistrate wrongly apply the burden to Mrs. West? I don't think so. I think she followed the Seckle case. In any event, what's important... What does the payment of $228.51 that was paid by the West with the application for reinstatement, what does that represent? Well, what it represents, and the language is on page 60A of volume 2 of the appendix  And there are five conditions there for a reinstatement. And Mr. Jordan did refer to the two provisions. One is making a payment sufficient to keep the policy in force for three months. And another is paying an amount large enough to cover the unpaid monthly deductions for the grace period. See, what happened here is that when he failed to pay the quarterly premium that would cover three months on May 1st, 2004, then he did not pay for continuing coverage. But that coverage stayed in place for an additional 61 days under the grace period. So under that period, unlike in Collister, for example, unlike for the making of an initial policy, a brand-new policy, here he actually got the full benefit of his bargain and then some because without making the payment that was now past due, he was still covered. So the payment that he made... I'm sorry. But that payment also covered him through the end of July. The payment that he made was in order to make up for a payment that he didn't make before. But didn't that payment cover him for the months of May, June, and July? It was a three-month. Okay, so when he sent the money in, which check was cash, before he died, he had made payment for the three months, including the month in which he died. He had made a quarterly payment for three months. Okay, so there are similarities there factually between this and Collister. Well, but I think you hit on the key difference in questioning Mr. Jordan, and that key difference is there's no receipt here. In Collister, if you read the decision, they went on for pages and pages and pages about two factors. One of the factors was the issuance of a conditional receipt, and they cited cases from all over the country on that, and there's no conditional receipt here. The second factor was whether he had paid something for nothing. In that case, it was an initial policy. He never had coverage before. But here, with the grace period, he had coverage for two months that he didn't pay for. So different from Collister, he didn't pay money in return for nothing. It was the exact opposite. The company provided him with coverage without being paid for that coverage. That's a key distinction. I think if you go back and look at, I think it's page 598 of the Pennsylvania Reporter Edition of Collister, there's a very important statement at the end. After they set forth the standard and the burden of proof and everything we've already talked about, what they say is that if an insurance company says before the premium is paid that it does not intend to provide coverage without actually approving the evidence of insurability, then the insurer can and does meet its burden under Collister. What they then said in the next paragraph is that that disclaimer, that statement, cannot be on the receipt. So in other words, you can't wait until the premium is paid, then issue a receipt which says, by the way, we're not going to cover you until we have underwriting approval of your application. Here, in our case, you're right, there was no receipt given for this payment. The only statements that were made were all, as Collister allows, before the payment was made. It was in the policy, it was in the termination letter, it was in the reinstatement application. Three different times. Let's go to page, since you have the appendix in front of you, 183A of the appendix, which is a termination letter. Yes. The second line of that letter says, we don't know why the premium for the life insurance policy hasn't been received, but we would be extremely sorry to lose you as a policyholder. Yes. Couldn't someone reading that, like Mr. West, conclude that from that letter, he was still a policyholder, all he had to do was send his check in and send a reinstatement application in? Well, I think that's probably splitting the hair a little too finely. Certainly if he sent in his application and the reinstatement application was granted after underwriting approval, then he would continue on as a policyholder. There would be a small gap there, that's correct. But the gap would be very small. Unfortunately, what happened here is that five days after he sent in the application, it passed away. I think another important point to note is, under the Bearer case from Eastern District of Pennsylvania, this is one of the cases that considered whether Colister should even apply in the context of a reinstatement application. And they said, look, you have to look at, as Colister requires, the entire transaction to even determine whether the expectations of coverage would be reasonable here. And they said that the policy language is the best indication of the reasonable expectations of the insurer. So even if you look at all the circumstances, you look at the letter we just looked at, you look at everything they received that they never read, everything that said that there's no coverage without underwriting approval, you look to the policy language first and foremost. Here, the policy language is clear. I don't think there's any argument that it's anything but clear. It specifically says we have to approve the reinstatement application before there's continued coverage. There's no misleading act. Unlike Colister, there's no conditional receipt that you can take and say, well, we can interpret it one of two ways. There was nothing. There was no misleading act after that policy that said, well, maybe there's coverage, maybe there's not. And all of the prior correspondence that he got said exactly the same thing. This was not the first time that he had missed a payment. It was simply the first time that the policy was terminated. But he had gotten prior correspondence, which is all in the appendix, on numerous occasions, all of which set forth the terms and conditions for reinstatement. Every single time he got one of those letters, he was on notice that without underwriting approval, there is no continuation of coverage. Given that, when you look at the policy language, when you look at the fact that there was no receipt, when you look at the fact that he was covered for a period for which he didn't pay, and when you look at the fact that all of the prior correspondence set forth all of this information, there's just no basis to conclude that any expectations he had of coverage were reasonable. In fact, he didn't have any expectations of coverage. The Seckle case specifically says that unless there's anything in the record that shows that he had any expectations of coverage, you can't conclude that they were reasonable. Here, Mrs. West testified that Mr. West opened all of his mail and then handed it to her to deliver. He didn't read it. She testified she didn't read the policy. She didn't read the termination letter, except to know that they had to fill out the reinstatement application. And she didn't read the reinstatement application, except to check the box, which she did as to his medical condition. Plus, she said they didn't discuss it, either with their agent, Mr. Cotton, or with each other. They didn't have any expectations. If they had an expectation we could argue about whether it was reasonable, they didn't even have it in the first place. As unfortunate as the situation is, the fact remains that there was simply no policy in place when he passed away, and therefore there's no coverage. Thank you. Thank you, Mr. Davis. Mr. Jordan. Your Honor, I'm really not saying that there was a policy in place at the time. What I'm saying is that there had been coverage applied for, which under Collister, because of the advance payment required, required the insurer to provide coverage until they decided to either allow the application or to deny it. Here, the documents that are involved, and that's all that the defendant relies on here, are less clear to the applicant than they were in Collister. Yeah, it says coverage won't start until we approve coverage, but that language on the application that he sent back was on the back of the letter that you referred to, Judge Fischer, which says, upon underwriting approval and receipt of payment, coverage will continue uninterrupted. Now, that seems to assume that when they approve reinstatement, of the policy, there will, in fact, already be some coverage to continue uninterrupted. And under Collister, that's what happens. You have the coverage when you make a prepayment that's required by the insurance company, and that coverage will continue if the application is approved. If the application is denied, then you would not have coverage. And clearly, Mr. West paid for something he did not get. I went through it before, but at the time he submitted that application, he was not obligated to pay Lincoln Benefit any money at all. The entire amount of money that he paid was paid solely for the purpose of getting new insurance, reinstating the policy that he had. But even if you say, as you pointed out, that the company would like to look at two months' worth of that as having paid for the coverage he got during the grace period, he still was paying a third month on top of that. And coincidentally, within that third month, he died. Thank you.